IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 16-cv-02902-CMA-GPG

HANSEN CONSTRUCTION INC., and
STEVEN A. HANSEN,

    Plaintiffs,

v.

EVEREST NATIONAL INSURANCE COMPANY,

    Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

This matter is before the Court on Defendant Everest National Insurance Company's Motion for Summary Judgment. (Doc. # 68.) Because genuine issues of material fact govern this dispute, the Court denies Defendant's motion.

## I.    BACKGROUND

### A.  THE UNDERLYING LITIGATION

This lawsuit stems from an underlying construction defect lawsuit (the "Underlying Litigation") involving twenty single-family homes constructed between 2005 and 2007 in the Ironbridge Homes project in Glenwood Springs, Colorado. (Doc. ## 4 at 2; 72 at 5.) Plaintiffs Hansen Construction, Inc. and Steven Hansen (collectively, "Plaintiffs") were among the defendants in the Underlying Litigation, wherein homeowners sought to recover for property damage allegedly caused by construction defects and soil movement. (Doc. ## 68 at 2; 72 at 5, 9–10.) The Underlying Litigation

1

culminated in an arbitration hearing in January and February 2015 (Doc. # 4 at 4), following which the arbiter found all defendants jointly and severally liable for property damage to the homes and entered an award against them in excess of $9 million. (*Id.* at 4.) Plaintiff Steve Hansen satisfied the judgment on behalf of all arbitration defendants by paying $9,218,911.60 in October 2015. (*Id.*)

### B. INSURANCE COVERAGE

As pertinent here, Plaintiffs were issued two primary commercial general liability insurance policies by Maxum Indemnity Company during the relevant time period: a 2006–2007 policy (the "2006 Maxum Policy") and a 2007–2008 policy (the "2007 Maxum Policy"). (Doc. # 68 at 2.) Each policy had a $1 million per "occurrence" limit and a $2 million aggregate limit. (*Id.*) Defendant Everest National Insurance Company ("Everest") issued Plaintiffs a single excess liability insurance policy, which provided excess coverage to the 2007 Maxum Policy; Plaintiffs did not have an excess coverage policy with Everest under the 2006 Maxum Policy. (*Id.* at 2–3.)

With respect to the Underlying Litigation, Maxum initially denied Plaintiffs coverage under the 2007 Maxum Policy but agreed to defend under the 2006 Maxum Policy. (Doc. # 72 at 3.) Everest likewise denied excess coverage for the 2007 term because a threshold requirement to Everest's excess coverage obligations was the exhaustion of the 2007 Maxum Policy. (Doc. # 68 at 2–3.) In April 2014, however, Maxum revoked its denial under the 2007 Maxum Policy. (Doc. ## 72-30 at 1–15; 72-29 at 157.) Maxum then informed Everest that it was no longer denying coverage; Everest nonetheless maintained its denial. (Doc. ## 72-30 at 61; 72-29 at 131.)

Maxum essentially represented Plaintiffs throughout the Underlying Litigation, subject to a full and complete reservation of rights, and incurred over $600,000 in defense costs and attorney's fees.  (Doc. ## 72 at 3; 72-31 at 132, ¶ 57; 72-30 at 1.)  Following arbitration, Maxum sued Plaintiffs to avoid coverage for the Underlying Litigation, arguing that Maxum did not owe a duty to defend or indemnify Plaintiffs under either Maxum Policy.  (Doc. # 72-31 at 125–37.)  Plaintiffs asserted counterclaims for breach of contract, declaratory judgment, and bad faith.  (Doc. # 68 at 10.)  Maxum and Plaintiffs settled that litigation in March 2016.  (Doc. # 70-29 at 157–63.)  Pursuant to that settlement, Maxum paid Plaintiffs $500,000 and the parties stipulated that "payment of the [$500,000] sum, combined with payments made and/or to be made by Maxum in connection with the . . . Underlying [Litigation] . . . has exhausted [the] single per-occurrence limit under the [2007] Maxim Policy."  (*Id.* at 158.)  To effectuate the exhaustion of $1 million single occurrence limit, Maxum reallocated costs between the 2006 and 2007 Maxum Policies.  (Doc. ## 72 at 3; 72-29 at 176–77.)

Following the settlement, Plaintiffs informed Everest that the 2007 Maxum Policy had been exhausted.  (Doc. # 72-29 at 174–75.)  Plaintiffs requested that Everest reconsider of its previous denial of coverage and issue excess coverage to Plaintiffs to cover the $9,218,911.60 judgment against them.  (*Id.*)  This request followed two of Plaintiffs' previous requests for reconsideration: one in November 2015 and another in April 2016.  (*Id.* at 174.)  In all instances, Everest effectively refused to defend or indemnify Plaintiffs in the Underlying Litigation.  (Doc. # 4 at 5.)

### C. THIS LAWSUIT

Plaintiff thereafter initiated this lawsuit against Everest in October 2016, bringing claims for breach of contract, common law bad faith, and statutory bad faith. (Doc. # 4 at 5–6.) Plaintiffs also seek a declaratory judgment clarifying the rights and obligations of the parties. (*Id.* at 5, 8.) On December 21, 2017, Everest filed the instant Motion for Summary Judgment, arguing for the dismissal of all Plaintiffs' claims. (Doc. # 68.)

## II. EVEREST'S MOTION FOR SUMMARY JUDGMENT

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). Stated differently, "summary judgment cannot be granted unless the evidence is so clear that there is no genuine factual issue." *Williams v. Borden, Inc.*, 637 F.2d 731, 738 (10th Cir. 1980). In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A fact is material if, under the applicable substantive law, it is essential to the proper disposition of the claim. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *Id.* (citing *Anderson*, 477 U.S. at 248). Determinations of an insurance company's duty to defend or indemnify

are largely questions of fact. *Cypris Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 301–02 (Colo. 2003).

**B. ANALYSIS**

Everest requests that this Court grant summary judgment on all of Plaintiff's claims, arguing primarily as follows:

1. The damages awarded in the Underlying Litigation do not fall within the scope of the Everest Policy because they are excluded by the subsidence exclusion and because they occurred before the subsidence exclusion was amended;

2. Even if the damages were within the scope of the Everest policy, Plaintiffs are not entitled to recover all $9,218,911.60 under the Everest policy because the total damages should be allocated between successive insurance carriers on a time-on-risk basis, i.e. Plaintiffs should not be permitted to "pick and choose" Everest as liable for the entire sum when the damage is also attributable to other insurance providers;

3. Plaintiffs cannot satisfy their burden of proving exhaustion of the 2007 Maxum Policy—a prerequisite to obtaining excess Everest coverage—because a $2 million limit, not a $1 million limit, is required and the settlement between Plaintiffs and Maxum was collusive; and

4. Plaintiffs' common law and statutory bad faith claims fail as a matter of law because no coverage was required under the Everest policy and because they are barred by the applicable statute of limitations.

Plaintiffs respond by highlighting genuinely disputed material facts precluding the grant of summary judgment with respect to each of these arguments. The Court agrees with Plaintiffs that material factual issues preclude summary judgment in this case.

Specifically, Everest's first two arguments—the applicability of the subsidence exclusion and a time-on-risk damage allocation—depend heavily on the timing of the property damage in the Underlying Litigation and its cause. Everest highlights soil movement issues that occurred in spring 2006, before the Everest policy went into effect and also before the subsidence exclusion was amended; yet, Everest also contends that the property damage was continuous and progressive. Plaintiffs cite evidence demonstrating that the issues occurred during the Everest policy period and that the damage was gradual and long-term, affecting some homes much later than others, even occurring well into 2007. The arbiter in the Underlying Litigation did not make findings about when or precisely how the homes were damaged. Because there is evidence before the Court to support either party's argument and a reasonable juror could find either way, summary judgment is not appropriate. *See Williams*, 637 F.2d at 738 ("[S]ummary judgment cannot be granted unless the evidence is so clear that there is no genuine factual issue and the determinations can be made as a matter of law.").

Everest's third argument—whether the 2007 Maxum Policy was properly exhausted—also depends on disputed material issues, including whether one occurrence (resulting in a $1 million exhaustion limit) or multiple occurrences ($2 million exhaustion limit) caused the property damage at issue in the Underlying Litigation. *See Business Interiors, Inc. v. Aetna Casualty and Surety Co.*, 751 F.2d 361, 363 (10th Cir.

1984) ("[A]n occurrence is determined by the cause or causes of the resulting injury."); *see also Hoang v. Monterra Homes (Powderhorn) LLC,* 129 P.3d 1028, 1034 (Colo. App. 2005), *rev'd on other grounds sub nom. Hoang v. Assurance Co. of Am.*, 149 P.3d 798 (Colo. 2007) ("The term 'occurrence' is to be broadly construed against the insurer."). Everest argues that there were multiple occurrences in this case, including the shallow construction of the homes' foundations, improper grading and landscaping, failure to install storm water infrastructure, and multiple sources of water infiltration. Plaintiffs, on the other hand, contend that there was only one cause of damage to all the homes—"the collapse of soils caused by water." Each party cites to case law and expert affidavits supporting their position. *See Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 802 (Colo. 2007), as modified (Mar. 5, 2007) ("A long term exposure to a harmful condition that results in damage or injury may be an occurrence."); *U.E. Texas One-Barrington, Ltd. v. Gen. Star Indem. Co.*, 332 F.3d 274, 278 (5th Cir. 2003) (discussing how various leaks may constitute separate occurrences). Again, the arbiter made no findings with respect to the number of occurrences or causes of property damage in this case, and this Court is without sufficient evidence to resolve this dispute as a matter of law. Moreover, Everest's allegation that Maxum and Plaintiff's settlement and subsequent reallocation of funds was collusive creates a factual dispute properly left for resolution by a jury at trial. *See Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116, 123 (Colo. 2010), as modified on denial of reh'g (Jan. 10, 2011) ("[T]he mere specter of fraud or collusion need not render all stipulated judgments unenforceable against an

7

insurer, because the existence of fraud or collusion can be determined at trial like any other issue of fact.").

Finally, with respect to Everest's timeliness concerns, the parties genuinely dispute the date on which the statute of limitations began to run on the bad faith claims in this case. Claims for common law and statutory bad faith accrue when the insured knows or should have known of both its injury and cause. Colo. Rev. Stat. § 13-80-108(1); *Wardcraft Homes, Inc. v. Employers Mut. Cas. Co.*, 70 F.Supp.3d 1198, 1212 (D. Colo. 2014). Plaintiffs' bad faith claims are based on Plaintiffs' allegations that Everest (1) breached its duty of good faith and fair dealing by, among other things, failing to defend or indemnify Plaintiffs, and (2) unreasonably delayed or denied Plaintiffs' claims without a reasonable basis for doing so. Everest argues that Plaintiffs "should have known" about these injuries on November 18, 2010—the date that Everest first denied coverage. Plaintiffs, however, contend that they could not have known about the injury giving rise to their bad faith claims until late spring 2016, after Plaintiffs settled with Maxum, exhausted the Maxum policy, and retendered their claim to Everest, which then denied it. The Court cannot resolve this disputed factual averment as a matter of law. Indeed, it is unclear from the record whether Plaintiffs should have known that Everest's initial denial would not change throughout the course of the Underlying Litigation; although Everest appears to have been firm in its decision, Maxum's revocation of its previous denial, settlement with Plaintiffs, and subsequent policy exhaustion may have caused Plaintiffs to reasonably believe that Everest, too, would reconsider. That Everest did not reconsider does not mean, as a matter of law, that the limitations period

began running at the initial denial. "It is settled law in the majority of circuits that the issue of when a plaintiff knew or with reasonable diligence should have known of a cause of action is a question of fact for the jury." *Williams v. Borden, Inc.*, 637 F.2d 731, 738 (10th Cir. 1980). Because this Court is not convinced that the record, viewed in the light most favorable to Plaintiffs, demonstrates conclusively when Plaintiffs knew or should have known about the cause and injury giving rise to its bad faith claims, summary judgment cannot be granted.

### III. CONCLUSION

Accordingly, the Court denies Defendant's Motion for Summary Judgment. (Doc. # 68.)

DATED: June 1, 2018　　　　　　　　　BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge