IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 16-cv-02902-CMA-GPG

HANSEN CONSTRUCTION INC. and
STEVEN A. HANSEN,

    Plaintiffs,

v.

EVEREST NATIONAL INSURANCE COMPANY,

    Defendant.

## ORDER GRANTING MOTIONS TO EXCLUDE EXPERT TESTIMONY

This matter is before the Court on Plaintiffs' Motion to Exclude or Limit Expert Testimony by Jon F. Sands, Esq. Pursuant to FRE 702 (Doc. # 101) and Defendant's Motion to Exclude Expert Testimony Pursuant to Fed. R. Evid. 702 (Doc. # 102). Both Motions have been fully briefed.[1] (Doc. ## 103–106.) Based on the reasons that follow, the Court grants both motions.

### I.    BACKGROUND

In 2010, Plaintiffs were sued for damages that arose from an alleged construction defect. After attending arbitration proceedings, Plaintiffs Steven Hansen and Hansen Construction Inc. were found liable for the damages, and judgment was entered against them in Colorado state court. During the course of the underlying litigation, Plaintiffs

---
[1] Neither party requested oral argument on these Motions, and the Court does not find that a hearing is necessary under the circumstances.

were defended by three separate insurance carriers pursuant to various primary commercial general insurance policies. (Doc. # 102 at 2.)

One of the insurance carriers—Maxum Indemnity Company—issued two **primary** policies to Plaintiffs. One policy covered the period of 2006–2007 ("2006 Maxum Policy"), and the other policy covered the period of 2007–2008 ("2007 Maxum Policy"). Defendant issued Plaintiffs a single **excess** liability policy ("Everest Policy"), which covered the period of 2007–2008. The Everest Policy was written to correspond to the 2007 Maxum Policy, and a prerequisite for coverage under the Everest Policy is exhaustion of the 2007 Maxum Policy. (*Id*. at 3.)

In November 2010, Maxum denied Plaintiffs coverage under the 2007 Maxum Policy. However, Maxum agreed to defend Plaintiffs in the underlying litigation pursuant to the 2006 Maxum Policy. When Maxum denied coverage under the 2007 Maxum Policy, Defendant subsequently denied coverage under the Everest Policy.

However, in 2016, Maxum retroactively reallocated funds it owed Plaintiffs from the 2006 Maxum Policy to the 2007 Maxum Policy pursuant to a settlement agreement between Plaintiffs and Maxum. Thereafter, Plaintiffs demanded coverage from Defendant. When Defendant did not provide the coverage that Plaintiffs sought, Plaintiffs initiated the instant case, raising *inter alia*, a claim of bad faith breach of contract. *See* (Doc. # 4).

Both parties intend to call expert witnesses at trial to offer opinions regarding insurance industry standards of care and whether Defendant's conduct in handling Plaintiffs' claim was reasonable. Defendants object to Plaintiffs' proffered experts, J.

Kent Miller and Garth H. Allen, on the basis that their opinions are improper and inadmissible under Fed. R. Evid. 702. (Doc. # 102.) Plaintiffs object to Defendant's proffered expert, Jon F. Sands, on similar grounds. (Doc. # 101.)

## II. LEGAL STANDARD

Under *Daubert*, the trial court acts as a "gatekeeper" by reviewing a proffered expert opinion for relevance pursuant to Federal Rule of Evidence 401, and reliability pursuant to Federal Rule of Evidence 702. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589–95 (1993); *see also Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000). The proponent of the expert must demonstrate by a preponderance of the evidence that the expert's testimony and opinion are admissible. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009); *United States v. Crabbe*, F. Supp. 2d 1217, 1220–21 (D. Colo. 2008); Fed. R. Evid. 702 advisory comm. notes. This Court has discretion to evaluate whether an expert is helpful, qualified, and reliable under Rule 702. *See Goebel*, 214 F.3d at 1087; *United States v. Velarde*, 214 F.3d 1204, 1208–09 (10th Cir. 2000).

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides that a witness who is qualified as an expert by "knowledge, skill, experience, training, or education" may testify if:

  (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
  (b) the testimony is based on sufficient facts or data;
  (c) the testimony is the product of reliable principles and methods; and
  (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In deciding whether expert testimony is admissible, the Court must make multiple determinations. First, it must first determine whether the expert is qualified "by knowledge, skill, experience, training, or education" to render an opinion. *Nacchio*, 555 F.3d at 1241. Second, if the expert is sufficiently qualified, the Court must determine whether the proposed testimony is sufficiently "relevant to the task at hand," such that it "logically advances a material aspect of the case." *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884, 884 n.2 (10th Cir. 2005). "Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions." *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994) (quotation omitted).

Third, the Court examines whether the expert's opinion "has 'a reliable basis in the knowledge and experience of his [or her] discipline.'" *Norris*, 397 F.3d at 884, 884 n.2 (quoting *Daubert*, 509 U.S. at 592). In determining reliability, a district court must decide "whether the reasoning or methodology underlying the testimony is scientifically valid." *Id.* (quoting *Daubert*, 509 U.S. at 592–93). In making this determination, a court may consider: "(1) whether a theory has been or can be tested or falsified, (2) whether the theory or technique has been subject to peer review and publication, (3) whether there are known or potential rates of error with regard to specific techniques, and (4) whether the theory or approach has general acceptance." *Norris*, 397 F.3d at 884 (citing *Daubert*, 509 U.S. at 593–94).

The Supreme Court has made clear that this list is neither definitive nor exhaustive. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). In short, "[p]roposed testimony must be supported by appropriate validation—i.e., 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590.

The requirement that testimony must be reliable does **not** mean that the party offering such testimony must prove "that the expert is indisputably correct." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2004) (quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)). Rather, the party need only prove that "the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Id.* Guided by these principles, this Court has "broad discretion" to evaluate whether an expert is helpful, qualified, and reliable under the "flexible" standard of Fed. R. Evid. 702. *Velarde*, 214 F.3d at 1208–09; *Daubert*, 509 U.S. at 594.

### III.     ANALYSIS

Neither party raises arguments related to the qualifications of the experts at issue. Rather, both parties assert that the expert opinions should be limited or excluded because the opinions are not helpful due to the fact that they relate to subject matter committed exclusively to the jury or to the Court. The Court agrees.

**A.     HELPFULNESS OF EXPERT OPINIONS**

Federal Rule of Evidence 704 allows an expert witness to testify about an ultimate question of fact. *United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015). To be admissible, however, an expert's testimony must be helpful to the trier of fact.

5

Fed. R. Evid. 702. To ensure testimony is helpful, "[a]n expert may not state legal conclusions drawn by applying the law to the facts, but an expert may refer to the law in expressing his or her opinion." *Richter*, 796 F.3d at 1195 (quoting *United States v. Bedford*, 536 F.3d 1148, 1158 (10th Cir. 2008)); *see, e.g.*, *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 592 (6th Cir. 2014) (report by proffered "liability expert," which read "as a legal brief" exceeded scope of an expert's permission to "opine on and embrace factual issues, not legal ones.").

"The line between a permissible opinion on an ultimate issue and an impermissible legal conclusion is not always easy to discern." *Richter*, 796 F.3d at 1195 (quoting *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006)). Permissible testimony provides the jury with the "tools to evaluate an expert's ultimate conclusion and focuses on questions of fact that are amenable to the scientific, technical, or other specialized knowledge within the expert's field." *Id*. (citing *United States v. Dazey*, 403 F.3d 1147, 1171–72 (10th Cir. 2005) ("Even if [an expert's] testimony arguably embraced the ultimate issue, such testimony is permissible as long as the expert's testimony assists, rather than supplants, the jury's judgment.")).

However, "an expert may not simply tell the jury what result it should reach . . . ." *Id.* at 1195–96 (quoting *Dazey*, 403 F.3d at 1171). Further, "expert testimony is not admissible to inform the trier of fact as to the law that it will be instructed to apply to the facts in deciding the case." 4 Jack B. Weinstein et al., *Weinstein's Federal Evidence* § 702.03[3] (supp. 2019) (citing, *e.g.*, *Hygh v. Jacobs*, 961 F.2d 359, 361–62 (2d Cir. 1992) (expert witnesses may not compete with the court in instructing the jury)).

Similarly, contract interpretation is not a proper subject for expert testimony. *Id*. (citing, *e.g.*, *Breezy Point Coop. v. Cigna Prop. & Cas. Co.*, 868 F. Supp. 33, 35–36 (E.D.N.Y. 1994) (expert witness's proposed testimony that failure to give timely notice of loss violated terms of insurance policy was inadmissible because it would improperly interpret terms of a contract)).

**B.     APPLICATION**

All three experts at issue in the instant Motions—Garth H. Allen, J. Kent Miller, and Jon F. Sands—intend to offer opinions that are objectionable on the basis of helpfulness. The Court will consider each purported expert in turn.

1.     <u>Garth H. Allen</u>

Mr. Allen is an attorney who has experience teaching insurance and risk management courses, and he has worked in the insurance industry as a consultant. (Doc. # 102-1 at 2.) According to Mr. Allen, his "insurance expertise includes commercial general liability insurance, excess commercial liability insurance, and commercial liability claims adjusting practices and industry standards." (*Id*.) In the instant case, Mr. Allen opines that Defendant's "claim-related conduct was unreasonable and not consistent with Insurance [sic] industry standards." (*Id*. at 9.)

Mr. Allen's opinion is based on his analysis of Colorado insurance law and on his interpretation of the Everest Policy. In short, Mr. Allen's report "reads as a legal brief . . . ." *Killion*, 761 F.3d at 592. In this regard, Mr. Allen's report conforms to a familiar pattern. In fact, the Court has found four cases in the District of Colorado in which

courts have either stricken significant parts of Mr. Allen's proffered opinions or precluded him from testifying entirely:

- *Woods v. ProBuilders Specialty Ins. Co.*, No. 11-cv-02151-CMA-KMT (Doc. # 202) (D. Colo. April 3, 2014) (granting in part motion to preclude Mr. Allen from testifying at trial);

- *Gebremedhin v. Am. Family Mut. Ins. Co.*, No. 13-cv-02813-CMA-NYW, 2015 WL 4979742 (D. Colo. Aug. 21, 2015) (granting in part motion to strike Mr. Allen's opinions) ("In some places [Mr.] Allen's opinions can only be described as pronouncements of law. . . . In addition, **many of [Mr.] Allen's challenged opinions are simply directions to the jury on how to rule that do not even refer to, let alone explain, industry standards**." (emphasis added));

- *Chateau Vill. N. Condo. Assoc. v. Am. Family Mut. Ins. Co.*, No. 14-cv-01583-PAB-NYW, 2016 WL 1444626 (D. Colo. April 13, 2016) (granting in part motion to strike Mr. Allen's expert opinions because they impermissibly interpreted an insurance policy);

- *Milanes v. Am. Family Mut. Ins. Co.*, No. 14-cv-03241-LTB-CBS, 2016 WL 9735791 (D. Colo. June 24, 2016) (granting motion to strike Mr. Allen's proffered expert opinions) ("**There are only a few instances in [Mr.] Allen's report where, rather than interpret or apply the law, he speaks to 'industry standards' or the like**." (emphasis added)).

The uniformity among cases striking Mr. Allen's opinions is likely due to the uniformity of the opinions themselves. A cursory comparison of Mr. Allen's report in this case (Doc. # 102-1) with Mr. Allen's report in *Milanes* (No. 14-cv-03241-LTB-CBS, Doc. # 66-1), for example, shows that Mr. Allen uses what is effectively a form opinion that recycles substantive sections and inserts facts specific to the particular case.

Based on the similarity of the opinions at issue, the Court finds that Judge Babcock's analysis in *Milanes* applies with equal force in this case. There, as here, Mr. Allen made "numerous pronouncements regarding the law that he believes applies to

8

this case" and he "frequently . . . state[d] legal conclusions drawn by applying law to facts." *Milanes*, 2016 WL 9735791, at *3. For example, Mr. Allen's report indicates:

> By failing to acknowledge its defense obligations, participate in the defense and explore settlement opportunities, and by failing to pay any of its insureds [sic] property damage liability [Defendant] engaged in several violations of minimum insurance standards that are encapsulated in the Colorado Unfair Claim Settlement Practices Act (CUCSPA), CRS § 10-3-1104(1)(h).

(Doc. # 102-1 at 13.)

Mr. Allen offered a similar opinion in *Milanes*. 2016 WL 9735791, at *3 ("American Family's conduct . . . was in violation of multiple prohibited practices under the UCSPA . . . ."). After noting the inadmissibility of such opinions, Judge Babcock "decline[d] to 'parse out the admissible portions' of [Mr.] Allen's proposed testimony from the inadmissible portions." *Id*. (quoting *Pearlman v. Cablevision Sys. Corp.*, No. 10-cv-4992(JS)(GRB), 2015 WL 8481879, at *10 (E.D.N.Y. Dec. 8, 2015)). This Court similarly declines to engage in such an exercise. Therefore, Mr. Allen is precluded from testifying at trial.

2. <u>J. Kent Miller & Jon F. Sands</u>

Mr. Miller and Mr. Sands both offer opinions that are similar in nature to Mr. Allen's opinion. Mr. Miller opines that "[t]he sum total of [Defendant's] neglect, delays, and misrepresentations is claim-handling conduct substantially below what I know to be the industry standards for adjusting excess coverage claims." (Doc. # 102-2 at 28.) However, Mr. Miller's opinion is entirely based on his interpretation of the law that controls this case as well as his interpretation of the Everest Policy. For example, Mr. Miller indicates that:

> While the usual rule is that an excess insurer is not obligated to provide a defense if the primary insurer is so obligated, many courts have adopted this proviso: There may come a point at which the potential liability of the insured is so great that the excess carrier is required to participate in the defense despite any contractual provision disclaiming coverage of expenses covered by other policies.

(*Id*. at 22) (citing twelve cases from various jurisdictions spanning a period of 1979 to 1995).

Mr. Miller then analyzed Defendant's conduct in light of the legal standard that he assumed would apply. (*Id*. at 22–23.) Thus, like Mr. Allen's report, Mr. Miller's report "reads as a legal brief," *Killion*, 761 F.3d at 592, and it appears to provide a proposed jury instruction regarding the duty of care applicable to excess insurance carriers. Additionally, Mr. Miller devotes substantial sections of his report to insurance policy interpretation. *E.g.*, (Doc. # 102-2 at 23) ("Ms. Meschenfreund's interpretation of the added sentence—in addition to being contrary to the plain wording of that endorsement—would also be rejected because it makes Endorsement #3 superfluous." (citing cases)). Therefore, because Mr. Miller's opinions are inextricably intertwined with his inadmissible legal analysis, he is precluded from testifying at trial.

Mr. Sands' report is flawed for the same reasons. His opinions are also inherently dependent on his interpretation of insurance law and his interpretation of the Maxum and Everest Policies. *E.g.*, (Doc. # 101-1 at 33) (assessing the legal analysis of Mr. Allen and Mr. Miller by offering his own interpretation of the law). Therefore, the Court applies the "good for the goose, good for the gander rule" in precluding Mr. Sands from testifying at trial as Judge Babcock did with the rebuttal expert at issue in *Milanes*. 2016 WL 9735791, at *4.

## IV. CONCLUSION

Based on the foregoing reasons, the Court ORDERS that Plaintiffs' Motion to Exclude or Limit Expert Testimony by Jon F. Sands, Esq. Pursuant to FRE 702 (Doc. # 101) is GRANTED. It is

FURTHER ORDERED that Defendant's Motion to Exclude Expert Testimony Pursuant to Fed. R. Evid. 702 (Doc. # 102) is GRANTED.

Accordingly, Garth H. Allen, J. Kent Miller, and Jon F. Sands are precluded from testifying at trial.

DATED: June 25, 2019

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge